OPINION OF THE COURT
F. Dana Winslow, J.
In this action to recover damages for personal injuries allegedly sustained at a medical facility operated by defendant Nassau Health Care Corporation, defendant moves for a protective order nunc pro tunc to September 12, 2013 directing plaintiff to return certain documents turned over to plaintiff by the court at an in camera inspection on February 28, 2014 and precluding plaintiff from using the documents and information contained therein on the ground that such information is privileged pursuant to the Public Health Law and Education Law.
This action arises out of an incident which allegedly occurred on December 30, 2011 at Nassau University Medical Center (NUMC). Plaintiff was a patient in the mental health unit at NUMC. Plaintiff alleges that on December 30, 2011 he was physically assaulted by another patient in the dining room on the fourteenth floor of NUMC and that, as a result, he sustained serious injuries. Plaintiffs claim is predicated on allegations of negligent supervision on the part of defendant.
*304 On September 12, 2013, the parties appeared for a preliminary conference. A dispute was presented to the court regarding the defendant’s production of certain incident reports generated by defendant. The court, by short form order dated September 12, 2013 (the September 12 order), directed defendant to deliver to the court for in camera review “any report generated by the defendant with respect to the incident which is the gravamen of the plaintiffs complaint.”
On February 28, 2014, the court conducted an in camera inspection of four documents produced by defendant in accordance with the September 12 order:
1. New York State Department of Health (NYPORTS) Root Cause Report (seven pages);
2. New York State Office of Mental Health Report (printout) (five pages);
3. New York State Office of Mental Health Report (handwritten) (two pages); and
4. NUMC Department of Psychiatry and Behavioral Science Review Committee (two pages).
In connection with the in camera inspection, defendant submitted a privilege log along with a memorandum of law supporting its argument that the documents were privileged.
Upon inspection, the court determined orally that certain documents (items 1 and 4 above, as well as the first page of item 3) were not privileged and turned them over to plaintiffs counsel. The court declined to turn over item 2, pending an affidavit from the defendant that such document was actually submitted to the New York State Office of Mental Health. No party requested a written order, or sought to place an objection on the record.
On May 7, 2014, defendant filed the instant motion seeking a protective order nunc pro tunc to September 12, 2013 (the date of the preliminary conference and September 12 order). Defendant argues that insofar as the reports were generated and gathered in accordance with NUMC’s quality assurance program, they are protected from discovery pursuant to the Public Health Law and Education Law. Plaintiff opposes, arguing that this motion is, in essence, a motion to renew/reargue which is both groundless and in improper form. Plaintiff also argues that the privileges under the Public Health Law and Education Law do not apply.
The parties appeared for a conference on September 26, 2014. At the conference, the parties discussed their respective posi *305 tions on the motion. The issues to be determined were distilled as follows: (i) as a procedural matter, did defendant waive its objection to the court’s oral ruling regarding the non-privileged nature of the documents produced for in camera review; and (ii) as a substantive matter, was the issue of privilege correctly-decided?
With respect to the procedural question, the court is not aware of any authority that governs the issue of waiver in the circumstances presented here, and believes that it is a matter of first impression. It is undisputed that defendant objected to disclosure on the basis of privilege immediately in response to plaintiffs request for the disputed documents, and maintained that objection throughout the court’s in camera review and oral ruling. Following the court’s ruling, however, defendant did not: (i) request a written order or decision on the record; (ii) request to place its objection to the court’s ruling on the record, or (iii) move for a protective order until May 7, 2014. By that time, plaintiff had held the documents in his possession for at least two months and the deposition of plaintiff had already been conducted. Defendant now seeks the return of the documents and to preclude their use, particularly in connection with the deposition of defendant.
The court believes that it is incumbent upon the party who is aggrieved by a ruling to take prompt and definitive action to set the ruling aside, particularly in the context of ongoing discovery, which must proceed expeditiously and according to a prescribed schedule. That precept underlies the 30-day time limit imposed upon motions to reargue (CPLR 2221 [d] [3]) or the taking of an appeal (CPLR 5513). The time limit for reconsideration by the issuing court is relaxed only upon the introduction of new facts or law which could not have been presented on the original motion (CPLR 2221 [e]). Defendant maintains that CPLR 2221 does not govern the instant controversy because there was no written order determining a motion on notice. That begs the question of why defendant did not request a written order or to place the proceedings on the record in the first instance, in order to preserve its objection and to lay the groundwork for re-argument or appeal. Instead, defendant was silent for two months, and proceeded with discovery, at least to the extent of taking plaintiffs deposition. Defendant offers no justification, reasonable or otherwise, for the delay.
The orderly and fair administration of justice requires that rulings of the court may be reopened only upon a predict *306 able and timely basis, and not at the convenience or strategic advantage of any party. Accordingly, the court finds that defendant has waived its right to challenge the ruling of the court which allowed the disclosure of the disputed documents.
Although the court need not reach the substantive issue, the court finds that defendant has not met its burden to demonstrate that the documents are protected from disclosure by the Public Health Law and Education Law. Public Health Law § 2805-1, Education Law § 6527 (3) and Mental Hygiene Law § 29.29, read together, generally bar disclosure of information gathered in connection with a quality assurance investigation, credentialing or in compliance with a state reporting requirement, even when the information does not relate to medical treatment or malpractice, but rather to an incident of violence by a patient or employee. (See Katherine F. v State of New York, 94 NY2d 200 [1999].)
“The party seeking to invoke the quality assurance privilege bears the burden of demonstrating that the documents sought were prepared in accordance with the relevant statutes. Records simply duplicated by a quality assurance committee are not necessarily privileged .... [A] hospital is required, at a minimum, to show that it has a review procedure and that the information for which the exemption is claimed was obtained or maintained in accordance with that review procedure.” (Kivlehan v Waltner, 36 AD3d 597, 598-599 [2007] [internal quotation marks and citations omitted].)
In support of its assertion of privilege, defendant submits the affidavits of Maureen Shannon, the vice-president of quality management at NUMC (Shannon aff, exhibit F), and the affidavit of Dayo Alalade, Ph.D., the executive director of quality/risk management and personnel for the Department of Psychiatry and Behavioral Sciences for NUMC (Alalade aff, exhibit G). Both affidavits state that the defendant “maintains a Performance Improvement and Patient Safety Plan that is responsible for supervising the Hospital’s quality assurance program, the purpose of which includes improving patient outcomes and enhancing patient safety in accordance with the requirements of the PHL [Public Health Law].” (Shannon aff ¶ 6; Alalade aff ¶ 6.) With respect to the dispute at issue, both affidavits state:
“In this case, my office reviewed its records to determine if a quality review pursuant to Public *307 Health Law 2805-j and T were undertaken related to Lawrence Gaska. In that regard, to the extent that there was such a review, any of the materials prepared during such review activity are subject to an absolute privilege and not subject to disclosure .... Clearly, as indicated above, to the extent that they exist, the above-demanded documents would have been created in connection with the Hospital’s Performance Improvement and Patient Safety Plan pursuant to PHL 2805-j and 2805-1.” (Shannon aff ¶¶ 9-10; Alalade aff ¶¶ 9-10 [emphasis supplied and paragraph numbering omitted].)
The court finds that the statements offered in the Shannon affidavit and Alalade affidavit are too conclusory, vague and speculative to demonstrate that the particular information contained in the released documents was generated and gathered by, or at the behest of, the respective quality assurance department, in accordance with its stated quality assurance review procedure. Neither affiant seemed to know anything about the specific documents in question, least of all whether or not they even existed. The court finds this to be insufficient to meet the burden articulated in Kivlehan v Waltner.
The court has considered the remaining contentions of the parties and finds them to be without merit or rendered academic by the determinations herein. Based upon the foregoing, it is ordered, that the motion pursuant to CPLR 3101 for a protective order nunc pro tunc to September 12, 2013 is denied.